GLEISSE & HOLLAND *vs.* WINTER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In a possessory action to regain possession of a space of ground situated behind the Levee, and between it and the public street in the city of Lafayette, where the plaintiff was in actual possession more than a year, as a riparian proprietor, (the *locus in quo* being susceptible of private ownership) : *Held*, that the question, whether it be in fact the plaintiff's property, or has been *destined to public use*, is one of title which cannot be inquired into. No testimony is admissible except as to the *fact* of possession and disturbance.

A corporation can maintain a petitory action, to remove nuisances and clear the banks of rivers, by showing that the land occupied is *destined* to public use.

There is no particular form or ceremony necessary in the dedication of lands to public use. If the assent of the owner is shown, and the land is actually used for the public purposes intended by the appropriation, it is sufficient.

This is a possessory action. The plaintiff, Gleisse, alleges he was in peaceable possession, for more than a year, of a lot of ground in the Nuns' Faubourg, (now city of Lafayette) lying between square No. 1 and the river. That one Joshua Winter forcibly and illegally took possession of said lot, under pretence of authority from the president and board of council of the city of Lafayette, is breaking up the soil, digging holes, &c., though forbidden by the tenant of the plaintiff. He prays judgment restoring him to possession and for damages.

J. H. Holland instituted his possessory action against the defendant at the same time, alleging he was in peaceable possession of a lot of ground in the city of Lafayette, (formerly the Nuns' Faubourg,) situated between New Levee-street and the Mississippi river at high water mark, "*and in length about one hundred and twenty-three feet on New Levee-street.*" That the defendant, Winter, professing to act

under the authority of the city of Lafayette, entered upon the premises at various times, disturbed him in his possession by removing wood and other articles, planting posts, breaking and digging the soil, &c., wherefore he prays that the said Winter and the corporation of Lafayette be cited and enjoined to leave him in quiet possession of said premises, &c."

These two cases were consolidated.

The corporation of Lafayette pleaded a general denial, and that the street, levee and bank of the river in front of plaintiff's property has always been in *the possession and use of the public*, by the act incorporating the city of Lafayette, and placed under its charge.

The corporation further alleges that it employed the defendant, Winter, to free the street, levee and bank of the river from obstructions and incumbrances, for the convenience of passengers and the commerce of the country. That the plaintiffs have opposed it in the discharge of its duties, to its damage five hundred dollars, for which it prays judgment in reconvention, and that the plaintiffs be enjoined and restrained from incumbering and obstructing the street, the levee and the bank of the river in front of their property, &c.

Winter pleaded the general denial, and denied that he had trespassed on the private property of the plaintiffs, but was acting as an officer of the corporation of the city of Lafayette, and under its authority in removing incumbrances and obstructions from the public streets, the levee and bank of the river, for the purpose of allowing the free use thereof to the public. He prays judgment against the plaintiffs, that they be enjoined from incumbering the disputed premises and from resisting him in the discharge of his public duties, &c.

Upon these pleadings and issues the parties went to trial.

Depassau, witness for plaintiffs, says he has known the property belonging to the plaintiffs, since 1818. That Holland purchased from Derbigny, and that the possession of the plaintiffs has been public and peaceable ever since he has known it. That Gleisse has possessed the space between the levee and the river, in front of his property, by keeping up the

roads and levees, according to law; that he filled up said space, which was low and on which water stood, and used it for a wood yard; and also, by erecting sheds which were hired to persons who sold oysters; and that he continued to do so undisturbed, until he was interrupted by order of the city council of the city of Lafayette. That Holland filled up the space now claimed, which was formerly low and wet, and has possessed and owned the property, by keeping up the levee, and making it and the road at very great expense, and by occupying said space as a wood-yard. That the property of Mr. Holland lies between Tchoupitoulas-street and the public road, or continuation of New Levee-street, and that between this last road and the levee, the space has always been occupied by the plaintiff, Holland, as a wood-yard.

Witness being asked if the space between the road and the levee in front of the property of the plaintiffs has not always been occupied by them, and if he has ever known any other person to make a permanent use of the same, says, that goods have been landed there by other persons, and used for the occasion, but they would not have been allowed to occupy the same permanently.

Being asked if the space between the road and the river in front of the plaintiffs' property has not always been made use of as a public landing for materials and goods, says, that it was used as other places along the river, and for the purpose of landing goods and produce; but he does not know of any person having placed goods there permanently, without the permission of the proprietors. This property was generally occupied, that of Gleisse with lumber, and that of Holland as a wood-yard.

Pilie, city surveyor and witness for defendant, was shown the plan of the Nuns' Faubourg, made in 1810, by B. Lafon, by which it was sold out in lots. That while the Nuns' Faubourg was under the jurisdiction of the city of New-Orleans, the corporation always claimed the right for the public, and exercised the same over the space in front of said faubourg; and which is marked on said plan, from the interior line of the street or *grand route*, to the water's edge.

EASTERN DIST.
*February*, 1836.

GLEISSE ET AL.
*vs.*
WINTER.

EASTERN DIST.
February, 1836.
─────────
GLEISSE ET AL.
vs.
WINTER.
The city claimed the public use of said space, for the purpose of landing and shipping goods ; the right of taking earth for the batture in front, was reserved and confined to all the inhabitants of the faubourg.   The road or street, marked on the plan *grand route*, was used for carriages and passengers, and the remainder of the space to the water's edge, was for landing boats and vessels.

Other witness testified in substance to the same.

The deeds of sale, from the Nuns to the vendors of the plaintiffs in 1810, contained each the following clause, to wit : " Les dames vendresses établissent pour clauses et conventions générales et expresses des ventes partielles, qu'elles font présentement de leur habitation, que les acquereurs des trois premiers lots en profondeur à partir du fleuve seront chargés de l'entretien de la levée et du grand chemin, et jouiront en commun des droits de propriétaires riverains qu'ils seront néanmoins tenus de laisser prendre sur la batture, les terres dont les propriétaires des lots plus éloignés du fleuve, pourront avoir besoin pour remblayer leurs terrains pour y batir."

The district judge, after hearing all the evidence, was of opinion that the *locus in quo*, or disputed premises was a public place, destined to the public use, and not susceptible of ownership.

It was decreed that the plaintiffs be perpetually enjoined from opposing the defendants in regulating the use of the premises in question for the public, and the former remove all the obstructions therefrom and pay costs.   From this decree the plaintiffs appealed.

*Strawbridge*, for the plaintiffs and appellants.

*Preston*, for the defendants.

*Bullard, J.*, delivered the opinion of the court.

This case cannot be distinguished from that of *Depassau* vs. *Winter et al.* decided at the June term, 1834.   7 *Louisiana Reports*, 1.   When that case was argued the bench was not full ; some doubts having since arisen, we have reconsidered it with much deliberation.

It is contended that the defendants having shown a destination to public use of the *locus in quo*, no possession of it can be acquired, and no possessory action maintained. This argument assumes as a fact that there has been a destination to public use, while the principal if not the sole question in the case is, whether evidence of that fact be admissible in this action, it being merely possessory. There is, therefore, the appearance of reasoning in a circle. The actual possession or occupancy for more than a year is shown, and the deed from the Nuns proves the plaintiffs to be riparian proprietors. It appears to us that the *locus in quo*, being situated back of the levee, is from its natural position susceptible of private ownership. The question, whether it be in fact the property of the plaintiffs, or whether it has been devoted to public use, is in our opinion essentially one of title, and the *Code of Practice, article* 53, declares that in possessory actions no testimony shall be admitted except as to the fact of the possession or as to the disturbance, and all testimony relative to property shall be rejected. This doctrine was recognised and applied by this court in the cases of *Williams* vs. *Kelso*, and *Thomas* vs. *Baillio*, 7 *La. Reports*, 406 *and* 410.

But, it is contended further, that the defendants are without remedy if turned over to a new action as plaintiffs, and that they cannot maintain a petitory action. The right of corporate bodies to maintain such an action has several times been recognised in this court, and especially in the case of the *Trustees of Natchitoches* vs. *Coe.* 3 *N. S.*, 140.

But, even admitting that the question of a dedication to public use may be examined in this case, it is perhaps doubtful, according to the evidence, whether such dedication in point of fact has been shown. It is not proved to have been used by the public under such a dedication. The Supreme Court of the United States in the case of the *City of Cincinnati* vs. *White*, said, "There is no particular form or ceremony necessary in the dedication of lands to public use. All that is required is the assent of the owners of the land, and the fact of its being used for the public purposes intended by the appropriation. This was the doctrine in the case of

20

EASTERN DIST.
*February*, 1836.

GLEISSE ET AL.
*vs.*
WINTER.

In a possessory action to regain possession of a space of ground situated behind the Levee, and between it and the public street in the city of Lafayette, where the plaintiff was in actual possession more than a year, as a riparian proprietor, (the *locus in quo* being susceptible of private ownership:) *Held*, that the question, whether it be in fact the plaintiff's property, or has been *destined to public use*, is one of title which cannot be inquired into. No testimony is admissible, except as to the *fact* of possession and disturbance.

A corporation can maintain a petitory action, to remove nuisances and clear the banks of rivers, by showing that the land occupied is *destined* to public use.

There is no particular form or ceremony necessary in the dedication of lands to public use. If the assent of the owner is shown, and the land is actually used for

<div style="margin-note">

EASTERN DIST.
February, 1836.

the public pur-
poses intended
by the appropri-
ation, it is suffi-
cient.

</div>

Jarvis and Dean, already referred to, with respect to a street, and the same rule must apply to all public dedications." 6 *Peters' Reports*, 431.

Upon this last point we express no opinion, but upon the whole we think the question of dedication ought to be left open, and in the mean time the plaintiffs maintained in their possession.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed; and it is further ordered, that the plaintiffs be maintained in their possession, reserving to the defendants the right, if any they have, to institute any legal proceedings for the purpose of establishing the rights claimed by them in favor of the city of Lafayette, or the public in general; the defendants and appellees to pay costs in both courts.